UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN JUSTIN (AMY) HANSON<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:21-cv-00610-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 18)** |

I.     **Introduction**

Plaintiff Martin Justin (Amy) Hanson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 16, 18.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

II.     **Factual and Procedural Background[2]**

On January 28, 2019 Plaintiff applied for supplemental security income.  The application was denied initially on May 9, 2019 and on reconsideration on August 26, 2019.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on October 7, 2020.  AR 33–63.  On October 30, 2020 the ALJ issued a decision denying Plaintiff's application.  AR 15–29.  The Appeals Council denied review on March 3, 2021.  AR 1–6.  On April 12, 2021, Plaintiff filed a complaint in this Court.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 6 and 10.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III.   **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).   Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is more than a scintilla, but less than a preponderance.   *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.   *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.   20 C.F.R. §§ 416.920(a)-(f).   The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of January 28, 2019.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: obesity, major depressive disorder, generalized anxiety disorder, and gender dysphoria.  AR 17–19.  The ALJ also found at step two that Plaintiff had the following non-severe, or non-medically determinable impairments: headaches, liver problems, gastroesophageal reflux disease (GERD), flat feet, vision problems, knee pain, back pain, sleep apnea, and hearing problems,   At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19–22.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following additions: can stand and walk 4 out of 8 hours; sit 6 out of 8 hours; occasionally stoop, kneel, crouch, crawl, and climb; perform simple, routine tasks that can be mastered in 30 days or less; work in proximity to others; occasionally interact with supervisors, coworkers, and the general public; maintain concentration, persistence, and pace within customary norms; make simple work-related decisions; can plan and set goals; adapt to routine workplace changes; can

travel; and, can recognize and avoid ordinary workplace hazards.  AR 22–27.

At step four the ALJ found that Plaintiff had no past relevant work.  AR 28.  At step five the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, namely: small products/bench assembler; marker; storage facility rental clerk.  AR 29.  Accordingly, the ALJ found that Plaintiff was not disabled at any time since her application date of January 28, 2019.  AR 29.

**V.   Issues Presented**

Plaintiff does not formally assert any specific issues by way of section headings, nor a statement of issues presented, or otherwise.  Plaintiff's argument generally concerns the RFC, the opinion evidence, and Plaintiff's testimony.

**A.   Applicable Law**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005) (*citing* 42 U.S.C. § 423(d)(1)(A)).  A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis or a medical opinion. 20 C.F.R. § 404.1521.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment or combination of impairments is one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520.  An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. §§ 404.1522, 416.922. "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522, 416.922.

When reviewing an ALJ's findings at step two the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . ." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3). "The ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

In evaluating opinion evidence the ALJ considers the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the ALJ must articulate how they are considered.  *Id.*

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.  An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.  An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.

**B.    Analysis**

The March 8, 2022 scheduling order requires, among other things, a short and separate statement of Plaintiff's legal claims, arguments separately addressing each claim, and legal and

factual citations in support.  Doc. 15 at 2.  Because Plaintiff did not provide these, the Court will

address the Plaintiff's brief piece by piece.

At pages 1 through 3 of the 6-page brief, Plaintiff recited the procedurally history without

analysis or argumentation.  In the section labelled "Medical Evidence" Plaintiff stipulates "that the

ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as

specifically stated in the Issues and Contentions."  Br. at 3, Doc. 16.  There is no corresponding

section labelled "Issues and Contentions."

There is however a section labeled "Disputed Issues" on page 3 which reads as follows:

> In this case, Ms. Hanson is a 20 year old who weighs 450 pounds with right knee
> dislocations as well as with a history of mental trauma and depression from verbal
> abuse from her stepfather who suddenly died. Physically she suffers from fatigue
> and sometimes uses a cane for ambulation as well as a knee brace. She also
> attempted suicide in May 2019. Despite a consultative examiner at 2F finding a full
> array of residual functional capacity, it is clear that this 450 pound individual has
> some limitations.

*Id.*

This paragraph is not a statement of disputed issues because none of the assertions in this

paragraph are disputed.  The strongest assertion in this paragraph is that Plaintiff does have some

limitations despite the consultative examiner's opinion that she had a full array of residual

functional capacity.  However the consultative examiner did not opine that Plaintiff had a full array

of residual functional capacity and, even if she had so opined, the ALJ did not adopt the consultative

examiner's opinion.  The consultative examiner opined that was restricted to medium exertional

work (50 pounds occasionally and 25 frequently) with postural limitations.  AR 386.  The ALJ

formulated an RFC even more restrictive than that.  In short, all agree that Plaintiff has some

limitations. The question here is what limitations she has and, more specifically, did the ALJ

adequately account for those limitations in the RFC.  Halfway through the motion for summary

judgment, Plaintiff's thoughts on the issue have yet to be stated.

1

2          Moving on to page 4 of the 6 page brief, Plaintiff quotes the ALJ's RFC and then states,

3    "Yet it is unclear however upon which medical provider such a residual capacity is based."  *Id.* at

4    4.  Contrary to Plaintiff's suggestion, a determination of residual functional capacity is not a

5    medical opinion and need not mirror any medical opinion,  rather it is a legal decision reserved for

6    the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2); *See* 20 C.F.R. §§ 404.1545(a)(3).

7          Moreover, there is no basis here to suggest that the ALJ constructed the RFC based on her

8    own lay-person interpretation of the medical evidence in contravention of the medical opinions.

9    The consultative examiner Dr. Siekerkotte opined that Plaintiff could perform a slightly reduced

10   range of medium work (AR 385–86).  Similarly, the non-examining physician, Dr. Khong, opined

11   that Plaintiff could perform a slightly reduced range of medium exertional work.  AR 69-72.

12   Finally, the non-examining physician who reviewed Plaintiff's file at the reconsideration level (Dr.

13   Spoor) opined that Plaintiff could perform light exertional work with postural restrictions and no

14   more than 3 hours of standing and walk.  The ALJ adopted that RFC in essentially every respect

15   save for 3 hours of standing and walking.  AR 89-90.  In sum, the RFC was supported in every

16   respect by 2 out of 3 opinions, and largely supported by the third opinion save for the distinction

17   between 3 and 4 hours of standing and walking.

18

19         The ensuing 2 pages of Plaintiff's brief contain block quotations of applicable law with no

20   analytical component.  Finally, at page 6 of the brief, Plaintiff provides a short analysis which is

21   quoted in full here:

22

23         In this case, at p. 11 the ALJ notes that the consultative examiner (2F)
24   reporting of almost a full range of work was less persuasive due to the obvious
     limitations from claimant's obesity. State Agency physician Dr. Khong (1A) finding
25   that claimant could perform a full range of medium work was less persuasive
     because it in essence followed the consultative examiner. And the State Agency
26   physician Dr. Spoor limiting claimant to light work, but with standing to no more
     than 3 hours was also found not persuasive because of claimant's testimony that she
27   tried to find work as a fast food worker for 4 hours per day (see p. 12). There is no
     medical evidence that supports this ALJ finding on functional capacity.
28         The ALJ did include additional limitation of standing/walking up to 4 hours

in an 8 hour day. Yet this is inconsistent with her testimony (AR p. 41-43) where she states that she has trouble walking and standing, can walk about one block and uses a cane one to two times per week. She further describes spending much of her time lying down to take the pressure of her 450 pounds off of her knee and back, and to recapture her breathing. The knee also dislocates and she wears a brace to keep the knee in place (AR p. 48). Further she cannot crouch as this does dislocate the knee (AR p. 47). Lastly, the lying down half to three quarters of the day and migraines, and her fear of leaving her home that she testified to would limit her ability to be on task enough to maintain employment.

An ALJ may consider daily activities that "may be inconsistent with the presence of a condition which would preclude all work activity." Curry v. Sullivan (1990) 928 F. 2d 1127, 1130. However, in this case claimant did not testify of an ability to stand 4 hours per day and no records support this exact restriction. In fact the medical opinion of Dr. Spoor provides only a 3 hour limitation. If the Court would have followed Dr. Spoor's opinion of three hours of standing/walking, the vocational expert found this residual capacity to be too restrictive for light work and sedentary restrictions should be considered along with the other limitations (AR p. 59).

Initially,  Plaintiff disputes the ALJ's rejection of Dr. Spoor's opinion that Plaintiff was limited to 3 hours of standing and walking.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p. Further, "[a]n ALJ may reject the opinion of nonexamining physicians so long as the ALJ references specific evidence in the medical record' that supports doing so") (internal citation omitted).  *Burkett v. Saul*, 806 Fed. Appx. 509, 511 (9th Cir. Mar. 6, 2020).

Here, the ALJ offered the following pertinent discussion:

As for Dr. Spoor's assessment limiting standing/walking to 3 hours, the record does not support this limitation. Notably, the record does not contain any imaging after the April 2019 right knee x-ray, which noted only mild medial compartment joint space narrowing, but no acute abnormality, mass, or erosive changes (2F/7). Additionally, the record routinely reported physical examination findings within normal limits (1F/4-5, 17, 24; 8F/47, 92, 304). Furthermore, when the claimant was looking for work in fast food, she was looking for 4 hours shifts because she felt she could stand for about 4 hours (1F/22). Likewise, at the hearing, the claimant testified she could stand for about 30 minutes at a time (hearing testimony), which is equivalent to 4 hours in an 8-hour workday. While these are purely subjective statements from the claimant, they still suggest an ability to stand and walk of more than 3 hours. Overall, the limited physical evidence would easily support that the claimant could perform all the exertional requirements of light work. However, out of an abundance of caution, the undersigned finds it prudent to restrict the claimant to standing and walking no more than 4 hours in an 8-hour workday. The record

does not reflect any objective findings to support further reductions.  Apart from this change, the undersigned finds Dr. Spoor's assessment persuasive.

Thus, the ALJ specifically underscored the lone time in which she departed from Dr. Spoor's opinion, namely the restriction to 3 hours of standing and walking (as compared to the RFC which specified 4 hours of standing and walking).  The ALJ rejected the 3 hour restriction in light of the most recent knee x-ray showing only mild abnormalities, as well as physical examinations within normal limits.  Plaintiff did not acknowledge or dispute this portion of the discussion.  A review of the cited exhibits confirms the ALJ did not unreasonably characterize those exams as within normal limits, at least in respect which would be relevant to standing and walking capacities.

At a February 6, 2019 visit, although the primary diagnosis was gender dysphoria, the review of systems (musculoskeletal) was negative for joint pain and myalgia and her gait was normal. Ex. 1F/4-5, AR 259–60.  At a visit on October 26, 2018, review of musculoskeletal system was also negative for joint pain and myalgia and normal gate was noted.  Ex 1F at 17 (AR 271). The same findings were noted on October 1, 2018.  AR 279.[3]

The ALJ also cited a psychiatric progress note dated October 1, 2018 which states, "she is looking for jobs in fast food and states she can only work about a 4 hour shift due to not being able to stand for long periods of time." Ex. 1F/22 (AR 277).  Although this was only one isolated statement, it is uniquely relevant to the issue at bar, namely whether Plaintiff could stand for 3 hours (as opined by Dr. Spoor), or for 4 hours (as the ALJ found).

In Plaintiff's second argumentative paragraph, she underscores her testimony that she can

---

[3] The unstated assumption here is that the physician or nurse actually performed a comprehensive review of systems and physical examination, including musculoskeletal.  But this seems unlikely.  These were not orthopedic consultations or primary care visits.  These were follow up visits for gender dysphoria with an endocrinologist, Dr. Ronakkumar Dwarkadas Patel, to discuss treatment options such as hormonal therapy.   This might explain why a review of systems (musculoskeletal) was listed as negative for joint pain and myalgia as musculoskeletal complaints were likely not a topic central to the nature of the visit.   Nevertheless, Plaintiff did not identify this issue, and the ALJ's reasoning for rejecting the 3-hour standing and walking limitation was sufficient overall for the reasons discussed in more detail below.

walk no further than 1 block without resting, spends most of the day lying down due to back and knee pain, requires a knee brace due to knee dislocation, cannot crouch due to knee dislocation, suffers migraines, and fears leaving the home.  Br. at 6.  She contends the RFC is inconsistent with these limitations.

Here, the ALJ acknowledged each piece of testimony Plaintiff underscores, and the ALJ also identified specific reasons for rejecting that testimony.  The ALJ simply did so at step two in finding the impairments non-severe.  With respect to migraines, the ALJ noted they were well controlled by propranolol.  AR 18 (citing Ex. 1F/4, 16, 36).  The cited records mostly support the proposition for which the ALJ cited them as follows:  Exhibit 1F/4 is a progress note dated February 6, 2019 which notes under clinical summary: "migraine controlled Propranolol."  AR 259;  Exhibit 1F/16 is a progress note dated October 26, 2018 which notes "migraine history since childhood. take(s) Tylenol and propranolol. reports that her migraine well controlled current meds."  AR 271; Exhibit 1F/36 is a psychiatric progress note dated August 11, 2018, which simply lists her migraine medications but doesn't comment on how well her migraines are controlled.  AR 291.  Thus the record sufficiently supports that Plaintiff's migraines were well controlled by medication and not a severe impairment warranting any work restrictions.  Plaintiff offers no reason to believe otherwise.

With respect to her knee pain, dislocation, brace use, cane use, and associated alleged limitations on standing, walking, and crouching, the ALJ made several pertinent findings.  First, the ALJ noted only mild knee abnormalities on knee x-ray.  AR 18 (citing Ex. 2F/7).  The x-ray results note no acute fracture or dislocation; mild medical compartment joint space narrowing; no soft tissue swelling, effusion, or other abnormality. AR 388.  The ALJ acknowledged that Plaintiff reported pain and dislocation to her providers on at least one occasion, but noted the absence of any records noting dislocation or any objective corroboration for her alleged need for a brace or cane.  The ALJ also noted that cane use was absent from Plaintiff's function report and from a third party

report submitted by her mother.  AR 18 (citing Ex. 3E, 4E, and 13E; AR 186–93, 194–205, and 239–40).

As to Plaintiff's knee functioning more generally, the ALJ cited physical examination findings from January 30, 2020 which reflected no leg swelling, redness, or pain upon musculoskeletal examination.  AR 19 (citing Ex, 8F/304, AR 781).  The ALJ also cited the consultative examination at which Plaintiff was able to walk, stand on toes, heels, and on one leg alone, as well as squat (2F/3). AR 384–85.  The consultative examiner did, however, note patella motion tenderness and that Plaintiff walks on the outside of her right foot, findings the ALJ did not appear to acknowledge.  *Id.*

With respect to Plaintiff's back pain, the ALJ again cited the consultative examination at which Plaintiff had tenderness to palpation across her low back, but otherwise had normal range of motion, strength, reflexes and sensation.  *Id.*  The ALJ further noted the absence of any imaging of Plaintiff's back and no other basis upon which to find an "organic" back condition as the cause of Plaintiff's alleged back pain.  *Id.*  Indeed, there appears to be no such evidence in the record, nor does Plaintiff identify any.

On balance, the ALJ reached a reasonable conclusion based on the limited records available concerning Plaintiff's knee pain and back pain.  The record reflected mild abnormalities on knee x-ray, no imaging of her back, and essentially no abnormalities by way of physical examination other than tenderness in her back, tenderness in her patella, and the fact that she walks on the outside of her right foot.  Although the ALJ found no severe knee or back impairment, the ALJ did include restrictions at the RFC stage in consideration of Plaintiff's obesity which might be expected to cause knee and back symptoms.  Accordingly, the ALJ limited Plaintiff to 4 hours of standing and walking with occasional postural activities.  This finding was supported by the cited medical records, the opinions of 1 out of 2 non-examining physicians, and the opinion of the consultative

examiner.

As to Plaintiff's alleged fear of leaving the house, the ALJ noted there was no evidence she'd ever been diagnosed with agoraphobia.  Further, the ALJ found that allegation inconsistent with evidence that she was filling out job applications for fast food jobs, attending an "options class" related to bariatric surgery (1F/39), and using a gym membership/personal trainer to try to lose weight (hearing testimony).  However, attending one class to explore bariatric surgery options is not inconsistent with the notion that she fears leaving the home.  The same can be said of the non-specific reference to "using a gym/personal trainer" with no details as to when or where these personal training sessions took place, with what frequency, or for what duration.  Nevertheless, the lack of evidence of an agoraphobia diagnosis, and the several instances in the record reflecting Plaintiff was looking for work ((1F/22; 1F/13; 2F/2; 7F/3;  AR 277, 268, 283, 473) undermine her allegation that fear of leaving the home is an impediment to her ability to work.

Plaintiff's third and final argumentative paragraph repeats the contention that Dr. Spoor's 3 hour standing/walking limitation should have been adopted in lieu of the ALJ's 4 hour restriction because "no records support this exact restriction" (namely the ALJ's 4 hour standing/walking restriction).  The argument appears to be predicated on the same misunderstanding discussed above, namely that the RFC must mirror an opinion.  The fact that the ALJ's RFC was more restrictive than 2 of the medical opinions does not mean the RFC was unsupported by those opinions.  The opinions of Drs. Khong (non-examining) and Siekerkotte (consultative examiner) do support the restriction that Plaintiff is limited to 4 hours of standing and walking.

Moreover, Plaintiff's contention that the ALJ arbitrarily chose 4 hours of standing/walking is not well taken.  As the ALJ emphasized, Plaintiff came up with that 4-hour estimate herself at a psychiatric appointment which notes as follows:  "she is looking for jobs in fast food and states she can only work about a 4 hour shift due to not being able to stand for long periods of time."  Ex.

1F/22 (AR 277).  In sum, Plaintiff identifies no error in the ALJ's analysis.

**VI.**     **Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Martin Justin (Amy) Hanson.

IT IS SO ORDERED.

Dated:   **January 7, 2023**              **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE